Good morning, Your Honors. May it please the Court, my name is Sean Nolan. I'm with the Federal Defender Office in Philadelphia, along with my colleague Pete Walker, who will represent Mr. Mullis. So I'd like to reserve five minutes for rebuttal, if I may. So Your Honors granted COA in this case and posed three questions, and so I'm going to go through those three questions. I just want to say that there's no question whatsoever that Mr. Mullis is severely mentally ill. He has been treated for profound mental illness from the time he was three, and that every doctor who has ever treated him or examined him has found that he has had major mental illness, except one doctor, and that is Dr. Scarano. And that happened because post-conviction counsel were ineffective in representing Mr. Mullis in the proceedings that led up to that waiver hearing. Led up and during? And during the hearing, correct, Your Honor. And thereafter as well, because they were still in the case, and I'll get to that, if I may. There is also sufficient evidence in this case, obviously we're going to talk about Shin v. Ramirez today, and the contours of that and what impact that has on E2 and what impact that has on Martinez. But what a claim, because that's what E2 says. And I think we'll come back to that. But what I would like to do first is talk about the three questions. And your questions were, was OCW, counsel of post-conviction, ineffective for conceding competency to waive? Can you reach that question consistently with Shin v. Ramirez? And was the ineffective assistance external to Mr. Mullis? The State says no, no, no. We say yes, yes, yes. And so let's get to that. The evidence supports excusing the procedural default in this case because of the ineffective assistance of trial counsel. And Shin held that you can have a hearing to support, to supplement evidence on a claim, but Shin did not disturb Martinez in terms of the procedural default analysis that is present in this case here. And the framework of Martinez controls is our position in this case. And the framework is a four-part test, as you know. The last two parts of the test, I think, are probably undisputed. The first is defaulted claim. Is the defaulted claim of ineffective assistance substantial? And I would submit that this Court, in your opinion, granting COA, that you decided that question. You said on page 20 of your opinion, it is plausible that Mullis's counsel procedurally fell below the standard for IEC and a more searching look is needed for sure. Mr. Mullis was sexually abused from the time he was a child. Well, I mean, that's a gatekeeping comment, as you know, and not a final ruling. So we have to go ahead and make a final ruling. We've just let you know what the questions were. Yes, Your Honor, I understand that. But I would suggest, and I'll argue that today, that the defaulted claim of trial counsel's ineffectiveness is a substantial claim. So we get through that first prong of the Martinez test. And the second prong is that cause exists of no counsel or ineffective counsel during the post-conviction. And what we're saying and what we've said in our papers that we filed with the Court is that counsel was ineffective. So let's get to the ineffective assistance of counsel, if I may, of OCW. And here's why they were severely ineffective. Deficient performance. Your Honor's said this in your opinion, that where an attorney has reason to believe his client may be incompetent, effective representation may require more than just a clean bill of health from a mental health expert. And that's what happened here. Because post-conviction counsel was ineffective, Dr. Scarano, who, as I said, dozens of mental health experts have treated Mr. Mullis and examined him in the course of these proceedings, and all of them have found a major mental illness except Dr. Scarano. Dr. Scarano was given neither. In your opinion, you said there were two possible scenarios where they may have been reasonable, OCW, that is, if the facts would not have prompted a reasonable lawyer to further investigate, or if they had investigated and found that he was competent. Neither of those things happened, Your Honor. Investigation was required, consistent with Profitt v. Waldron, as this Court cited, and none was undertaken whatsoever by OCW. They neglected to provide the court-appointed expert with any records whatsoever. He looked at the prison records and he examined Mr. Mullis, and that is it. So is there notice and is there failure? That's what we need for the deficient performance prong of the ineffectiveness claim to overcome the procedural default. Counsel was surely on notice and was objectively unreasonable to fail to investigate Mr. Mullis's mental health and his history. At the first meeting, there's evidence in the record, at the first meeting with Mr. Mullis, he told them that he was unable to predict the cycles of his bipolar disorder, and that at points it may be impossible for him not to give up on himself. So they knew that, and he has, and Your Honor, I've represented him myself for ten years. I've seen it myself. He is severely bipolar, and that causes these cycles, and he flip-flops. He has flip-flopped during the course of the proceedings since I have represented him, and I've seen it myself. And counsel knew that at the time that they were representing him leading up to this so-called competency hearing, which ended up really just being a stipulation to a report and the end of it. They, you know, he said, I may give up on myself, but what I would suggest is that counsel gave up on him. They knew he had done this already a number of times. They had in their possession the counsel files of previous counsel, and they had the files of Dr. Dudley and Dr. Mendel, who were the trial experts, and those records were replete with hundreds of pages, those files were replete with hundreds of pages of records showing multiple lifelong psychiatric hospitalizations and illnesses and all of that. And the only hope that Mr. Mullis had, and you said this in your opinion, the only hope he had of avoiding execution, of surviving, was to have competent counsel to help the court in its determination of whether he was giving up his rights knowingly, intelligently, and voluntarily. And that did not happen because they provided the expert with zero. Okay. I think some of that's overstatement. I'm reading the transcript of the waiver hearing, right, where the attorney is explaining what they did. He said six months, we've collected trial counsel's file, we interviewed at least one of the trial counsel, we contacted every one of them, we talked extensively with his family. That's not just stipulating. And then they said, right, and so. But Your Honor, they provided none of that stuff to Dr. Scarano. Well, and I've got Dr. Scarano's report here. He was given medical records, he was given some of the trial transcript. The trial transcript. I guess the question is, what records had they been given would have made counsel adequate? So there were Are we really focused on not waiting for the trial transcript? Right. Well, that is a big part of it, not waiting for the trial transcript, because the trial transcript had all kinds of evidence of severe mental illness that could have been provided to Dr. Scarano. But there were also other records. There was Galveston jail records, for example, that talked about his severe mental illness leading up to the time of his criminal trial. And those records were not provided to Dr. Scarano. You could see in Dr. Fuller's report, which was submitted with the 4A motion that was submitted to the CCA later, Dr. Fuller's report talks a lot about those Galveston records. And those are things that should have been examined by Dr. Scarano. And Dr. Fuller's report also, I would suggest, to get to the prejudice of Don't go too quickly. Let's just stick with Scarano, right? Because he's got multiple pages about records he reviewed. Medical records, list them all, page and a half, classification file, hearing, right? Your Honor, those medical records, I believe, are all from the prison records, not from external. They were not from childhood. They were not from adolescence. They were none of the records that there are thousands of pages of records of Mr. Mullis's repeated treatment from the age of three up until the up until the time of this crime. And Dr. Fuller, if he'd been given all the records you say an effective counsel had to give him, but still had concluded that Mullis was competent, would you be saying independently it was ineffective for not crossing him also? Well I may, but I would also say that Dr. Fuller's report, which came later, Dr. Fuller was given some additional information, not enough, but a good amount of information. And Dr. Fuller examined Mr. Mullis and found that he was not competent at the time of that waiver. And so I would say that He was not legally competent at the time he waived? Correct. That's in Dr. Fuller's report that was submitted to the state court in the 4A motion. Yes. So that goes to establish the prejudice of the ineffectiveness of OCW in representing Mr. Mullis in post-conviction. I'm still trying to figure out the Strickland cause. Your best case is Proffitt? Yes, Your Honor. And Bouchillon? And Bouchillon. But those are both quite dissimilar, right? Because weren't the defendants there previously adjudicated to be insane or whatever the appropriate word is? I'm not sure if they were adjudicated insane, but Mr. Mullis, I mean, has He's a history of horrible trauma, but the federal district court really was sensitive to that. That's not the same as being legally incompetent to decide his own fate. But I think that that question was never properly addressed in the state court because of the ineffective, because of the ineffectiveness. I mean... But I'm going to test you on that because that gets to the externality question. Right. I mean, I think the district court did say, you know, you were in a difficult predicament because you have got competing obligations here. How would it have been ineffective if their difficulty was that he kept saying, I don't, I want to waive. Isn't that internal to him? And it is his vacillations. It's his mental illness that's obstructing them. Right. I mean, so are you getting to the external? Well, I guess that's how the law looks at it. I mean, I think that... I don't see, I guess the point you put in the brief, you put it as what was your word, unethical promise. And I'm not really sure I understood why you think Mr. Levinson made an unethical promise. Remember that phrase you used? Yes, Your Honor. I think because when counsel was representing someone who's profoundly mentally ill, and I have done that many times in my career, particularly bipolar people who cycle, the bipolar disease, that's what it is. If you know people with it, that's what happens. They go up and down. I've seen Mr. Mullis at highs. I've seen him at lows. And Mr. Levinson knew that. And he made a promise to this very severely mentally ill person that if a doctor comes in and visits you and finds you competent, I'll say, I'll walk away. And I think that that was the wrong thing to do and was ineffective as well. And that's part of the problem. I mean, you've, I'm sure you have represented a lot in Saul. You do remember the district court here, federal, said, you know, I've seen him twice. This is page 56 of his opinion. And then the trial and habeas court, both, when you read the transcripts, this is not a vacillating person. He's very acute. He's aware of discrete appellate deadlines. At times, he is at times. And that's the point is that that changes. And you can see it even in the course of what was going on when the CCA was considering the for a motion and the extraordinary writ motion in the time that they were considering those motions. Mr. Mullis vacillated three times. And in fact, in one of those instances, he wrote a letter that caused the CCA to write an opinion. And then the CCA said, well, counsel could file a for a motion, even though it's out of time, asking us to overlook the time. But what the CCA did not give any credit to or resource to was an affidavit that was submitted by Mr. Mullis two weeks after that letter. And in that affidavit that he signed, that was filed in the extraordinary writ motion, he said, I want to pursue my appeals. And so that's the different thing. I think that this was a competency hearing that really did not have the meat that a competency hearing should have, with experts being examined, and perhaps opposing experts, and records being examined, and not just talking to a severely mentally ill man to determine whether or not he knows what he's doing is okay. And so that's been the problem with this case. And then that created all of the other problems that happened, which is the waivers and all the things that the director argues that we're here to try to overcome. But the prejudice, I think, you can just look at Dr. Fuller's report. And that is properly in the state court. And so when we get to the question of does Shin preclude the analysis of new evidence, there's a couple things I'd like to say about that, if I may, because Shin is based upon 2254E2, right? And that is about claims. That is not necessarily about process, right? And so the state's, the director's argument is that Shin says that you cannot consider any extra record evidence in support of your argument of procedural default. That's what their position is, and that's the position they're asking this court to take. But I would suggest a couple things. That's not what Shin says. Because in Shin, what they tried to do, the petitioners tried to do both. They basically tried to have their cake and eat it, too. They had what we call a cause hearing, right, where they were putting on evidence to overcome the procedural default. But then they were trying to use that evidence in support that was raised only for the first time in federal court, that evidence in support of their ineffective assistance of trial counsel claim. And that's what Shin said you couldn't do. And in fact, in the Shin case, the state tried to get the United States Supreme Court to say specifically that you can't put new evidence in in support of your arguments of procedural default. The court very plainly said on page 1738 of the decision, they said there are good reason to doubt that question, but we need not address it because our precedent squarely forecloses the second proposition, which was about using that evidence for the underlying ineffectiveness claim. So the director here is trying to get the court to create a rule that Shin does not create. And in their back to pre-Martinez even, which is Vineyard v. Drecke, which says 2255E has no bearing on evidentiary development on excuses for procedural default. And Shin did not disturb that. So that's still where we are. But I would also suggest to this court that you don't need to necessarily go there either, because what we have put forward in our papers is that there is sufficient evidence in the state court record because of that 4A motion that was filed in the state court and was considered by the CCA. And because of that extraordinary writ motion that was filed in the CCA and considered by the CCA, there is sufficient evidence in the state court record for us to overcome the procedural default. And as I said, the OCW had these files of the experts. Your The expert reports in this very case, there were three experts who issued reports in this case at the trial level. And OCW did not even give those reports to Dr. Scarano. And how can that comport with effective assistance of counsel? So I'd like... How long before the hearing did they get Scarano's report? How long? I think it was three or four days. It was within a week or so, I think, Your Honor. And they didn't ask for a continuance. They said something about the notes of testimony from the trial were going to be ready in seven days. And they didn't ask for a continuance to wait for the notes of testimony. And they also didn't provide Dr. Scarano with all this other information that they had in their possession. The third question that the court asked is, is the ineffectiveness external to Mr. Mullis? And in this respect, I would say that the director and the lower court got this wrong because of their reliance on Gonzales, which says clearly that a prisoner's incompetency is external to counsel, right? Is external rather to the defendant. And that's what Gonzales says. But in your opinion, granting COA, you distinguished Gonzales. You said Gonzales was no lawyer. And here, Mr. Mullis did have a lawyer, as we've been discussing. And in Martinez itself, the state argued that the ineffective assistance of post-conviction counsel is not external. The state in Martinez itself was arguing that ineffective assistance is not external, and so this rule should not happen. And that was rejected by the United States Supreme Court in Martinez's case. In fact, there's a very long dissent by Justice Scalia on that particular point. And so that is very clear, that the ineffective assistance of counsel is not external. And that, I think, answers your question pretty clearly. Martinez still controls, and it's holding that we can overcome the procedural default. There's a case called Tabler that this court had some years ago. It's a very short opinion. But in that case, it was a similar situation where there was competency hearings going on in the lower court, and this court sent it back saying that that was, the word external was not used. But that's clearly what was happening. If it had been external, that wouldn't have happened. So I think that that is still clearly good law. I'd like to maybe get to the underlying, the Director talks about the underlying ineffective trial counsel claim and how we can prove that without external evidence. And I suggest that we can. I first suggest that what the court ought to do is send it back to the district court for that analysis, to review that. The district court got it wrong in finding that this was all procedurally defaulted and that competency finding was fine, and that Mr. Mullis loses on that regard and never reached any of the claims. And I would suggest that you ought to send it back to that court to address that situation. But in your own opinion, you talked about citing Wiggins, which is obviously the seminal case in these types of situations, that it is not obvious that any potential failure to mitigate did not prejudice him because of the excruciating life history. And that's what happened here. But this is a complicated question, right, because of this 4A motion and this motion for extraordinary writ and that evidence that came into court as what was considered by the Court of Criminal Appeals in Texas. So that is evidence that the federal court can use in determining this question of the ineffective assistance of trial counsel. And this is a difficult situation, obviously, for us as Mr. Mullis's attorneys, because we were litigating this case all along under Martinez. So we got this case and we investigated and developed an enormous amount of additional evidence of his mental illness and additional evidence of the sexual trauma that he experienced from the age of 3 that was not presented to the jury, and we presented all of those things to the federal district court. Now, if we go back there now, arguably we cannot do that because of Shin. But there is sufficient evidence. I guess my point is, Your Honors, there is sufficient evidence in the state court record that was considered by the CCA, especially in the 4A motion, where they were deciding whether or not to find good cause to overcome this time bar. The CCA does that very often. They very often grant 4A motions to overcome that time bar. But they had to consider the evidence, and they wrote a short opinion denying that, finding there wasn't good cause. But that doesn't mean they didn't consider the evidence, as the Director is trying to say in their arguments. But some of the ways that we can prove that ineffective assistance of trial counsel claim using the evidence that is in the state court already is the Dr. Fuller report, because that was something that was not, the evidence that he uncovered was not sufficiently presented at the trial level. And as I mentioned, Judge Higginson, about those Galveston jail records that included depression, flashbacks, hallucinations, and further corroborate the cursory presentation that was to the jury at the trial level. And again, that is a reason. And there's also a report of Dr. Brahms. Dr. Brahms was an expert who was hired at the trial level as a consulting expert, but did not testify. OCW did not ever speak to her. I think in their 4A motion, they even said that, that they had never spoken to Dr. Brahms. And she did not testify at trial. But an affidavit from her was submitted to the CCA in the original writ application. And that affidavit talks about a plethora of interrelated mutual exacerbating problems, abandonment, neglect, trauma, sexual abuse, bipolar, reactive disorder, profound difficulties. And in her report, she also says something that's interesting to the overall question, which is his bipolar and make him want to commit suicide. And that's what's actually going on. Putting aside Dr. Fuller, did any of the other mental health experts cited in your brief conclude that Mullis was legally incompetent? At the time of the, they did not. In our federal submission, and I'm trying to, I'm trying to confine my answers to what's in the state court record because of where we are with SHIN now under this new kind of structure. There is a report from Dr. Dudley where he had examined Mr. Mullis multiple times and he calls it a serious question, I think is the wording he used. But Dr. Fuller is the only one who saw Mr. Mullis pretty close in time to the examination by Dr. Scarano. So I think that's why it holds more weight than that, your honor. There's really no case law that I've found that in this, for the unusual situation where the judge deemed he was competent to waive, but then continued OCW. That's correct. And that is a, that's something that, um, I think we, we argued that in our papers, that that's part of the continuing ineffectiveness because, because what the, what the, what the lower court said, what the trial court said is, okay, he can be pro se, but you OCW can continue to investigate and you can, I think they use the word prosecute. You can prosecute a habeas petition if he gives you the authority to do that. So they were, they were continuing and, and your honor, I looked for, we looked for similar cases and didn't really find anything like that. I think it is, um, it is something that hasn't happened very often because of the unique situation of this case. Uh, but also because of, of, you know, where we are now with, um, with Shin and I, I hope it's okay, I'm using the word Shin rather than Martinez Ramirez because I get confused between Martinez and Shin. So it made it easier for us. And that's the way I think the Supreme Court cited it in the Shoup case as well. Uh, but now that we, you know, now that we have Shin, I think it makes sense for this court, um, to send this back to the district court because the district court did not have the, um, the, the, the capacity to analyze, analyze Shin because it didn't happen. So this is just a weird case where the district court made his decision. We relied on Martinez and quite frankly, I thought we would be coming to this court as we had in some others and it would just get quickly remanded, uh, for a further analysis by the lower court who I, as I said, we believe got the, uh, uh, cause and prejudice analysis completely wrong. Um, so, so with that, I did. Thank you. Thank you, Judge Smith. May it please the court. The attorney errors here alleged cannot serve as cause to excuse Melissa's default of state habeas proceedings. That requires an extension of Martinez Trevino with which this court cannot do. And even if it could, even after all this time, years of litigation, zealous council and the development of an extensive federal record, Melissa still has not submitted an expert concluding that he was incompetent as a, uh, to waive habeas counsel and to waive his state habeas proceedings. Uh, counsel agrees here that the only expert who rendered such an opinion about competency was Dr. Filler. But of course, below the petitioner conceded that Dr. Filler's report is insufficient as a legal matter to establish incompetency. And that concession was correct because Dr. Filler's analysis, uh, concludes that Molis, uh, was suffering from depression and perhaps was suicidal. But this court has said time and time again, that depression does not and it looks to whether the defendant understands the factual, has a factual and rational understanding of the proceedings. As this court explained in Lopez in 2015, a case involving waiver of federal habeas proceedings. It's not a question of, you know, has the defendant made the right decision? The question is, is he capable of making that decision? And that's a simple question. Does he understand that he has just two options, continue with collateral review or accept execution? This defendant understood that. Uh, the state court found that, uh, based on Scorano's report, the state court's own observation, extensive observation of Molis at trial and at the competency hearing. State court's conclusion, of course, is entitled to deference under 2254 and there is no clear and convincing evidence to overcome it. The focus in this court has been Dr. Fuller's report, uh, and certainly that was closer in time, but Dr. Fuller's, uh, uh, report looks to a different question than this question of competency. Dr. Fuller opines that, uh, at the time of the initial analysis by Scorano, the petitioner was depressed and so, you know, he shouldn't have been allowed to waive. He was incompetent. So, obviously, it is the district court I thought was very sensitive to the difficult spot for any lawyer to be in a death penalty case, defendant who's himself been sexually traumatized his whole life. As I read it, the argument still comes down to he's vacillating. He keeps flip-flopping and at the, that, that doesn't excuse counsel from their issue. Reduces a little bit is, is it ineffective not to provide the full trial transcript number one and then not to cross him at all, especially as to the conclusion, neither access one or access two conditions and no cross as to his fear of going into general population. Uh, uh, it's neither of those things is ineffective, uh, and I'll take them in turn. The first is, uh, I believe the trial transcript. I asked a big compound question, but you're good enough to remember them all. If you could add one other element, not ineffective under profit or the case I can't pronounce. Uh, I assume that's how we pronounce it. Uh, so, uh, first question, the trial transcript, uh, this court's opinion in Lopez talks about this issue. Uh, competence is a different question than whether the defendant understands the potential strength of his habeas claims. So it doesn't, the defendant doesn't have to have a full picture, you know, okay, here's our proposed habeas petition. These are all the claims and this is exactly what we're going to argue. Do you or do you not want to file it? Uh, in Lopez, the court explained citing, uh, uh, 11th circuit precedent explaining that the, the, the question of the strength of legal claims is different than whether the defendant is capable of waiving his right to counsel and waiving his statutory right to habeas. So counsel did not need to wait for the trial transcript in order to, uh, uh, conduct this competency hearing. That was a, that was within the realm of reasonable professional discretion for counsel. Uh, now the second suggestion is crossing the expert on the stand. Uh, precedent shows that if counsel does not believe their client is incompetent, then counsel does not have a duty to, uh, create a suggestion of competency. And if counsel doesn't actually believe it's an issue. But Levinson had no knowledge, certainty at all as to that answer. That's why he recommends the court appointed psychologist. That's right. He says that he says he believed, uh, the petitioner's competency was questionable in his later submitted affidavits. And then he reasonably relied on an independent experts assessment precedent from this court and the Supreme Court recognize that counsel can reasonably rely on mental health experts to make these decisions. And we don't have any evidence in this record, even considering the new federal evidence showing that at the time of the hearing, Levinson believed that the petitioner was incompetent. But he did worry that the petitioner wanted to waive because the petitioner thought he'd be horribly abused if he actually succeeded with his ABS and ended up in the general population. Assuming that's true. If that is, if that's what Levinson believed, that's still not incompetence. Incompetence looks to whether the defendant has a rational and factual understanding of the choice in front of him. And, uh, the defendant, uh, may have been more fearful of the general population than counsel thinks he should have been, but that's the defendant's choice to make. It's rational to be concerned about, uh, uh, being in the general population, having the commit committed the crime and under the circumstances that this petitioner was facing. You heard opposing counsel's characterization of what's Skanar, Dr. Scar. How do you pronounce his name? I believe. Thank you. Um, do you, do you agree with that description of the records that he had? Uh, I don't disagree with, with what was put in front of him. I certainly, he didn't have the trial transcript. He didn't have the full, uh, historical background, uh, as far as the record shows. Uh, however, that's insignificant because, uh, competence is a snapshot in time. So when Dr. Scarano as a mental health professional, uh, talked to the petitioner, he was looking at, is this man at this moment capable of making this decision? Does he have a factual and rational understanding of the choice in front of him? Uh, and he determined that, uh, you know, whatever this, this vacillation and cycling that may or may not happen for this bipolar disorder, but if he was at a point in that cycle where he was, he had a rational and factual understanding, then he was competent to make that decision at that time. And there's no evidence to the contrary. So Dr. Scarano's report didn't need to rely on childhood mental health records, um, evidence of the defendant's mental state when he was 13 years old or when he was 17 years old and unexpectedly released from the juvenile detention facility. We're not asking whether he was competent to waive habeas when he was 13 or 17. We're asking whether he was competent to waive habeas in 2011. So why did we say ineffective in, in Bouchillon and Proffitt? Both of those cases in, uh, Proffitt does involve a defendant who had been adjudicated incompetent previously by a court in another state. And that would have shifted the burden to the prosecution under Texas law. Uh, so that's significant. More material, however, is that both of those cases involve not just a question of comp, it's not, wasn't, was not about a question of competency to waive collateral review. It involved competency at trial and more significantly, it also involved the potential insanity defenses, uh, actual merit sanity defenses that, uh, the court concluded counsel should have further investigated and raised. Uh, those are guilt stage problems, uh, very different than, uh, whether or not the defendant appreciates the circumstances once he's already been held guilty, found guilty. Uh, so neither, neither Proffitt nor Bouchillon changes, changes the result here. Uh, again, counsel's, uh, counsel's duty to their client is, as the court recognized in the COA opinion, a very facts and circumstances specific situation. Uh, so no case is going to be exactly like the other, but we can see in a lot of this court's precedent, uh, uh, for example, Austin B. Davis is a good example from 2017. In that case, the court talks about, uh, this, this sort of dilemma of there may be a mental impairment, what may be going on, but the court recognizes that mental illness does not equate to incompetency. And a defendant who waives, uh, his right to counsel or goes against counsel's advice even, uh, can do that even if he's suffering from mental illness. And even if, as we have in the record at most in this case, if he's depressed and even suicidal. Uh, so I think all of that goes, uh, primarily to the court's first question, was his state habeas counsel, um, uh, inadequate under the Strickland standard. My only other question on that is there is this unusual circumstance where court says you're competent to waive. What's the then Strickland duty that continues when the court simultaneously says, but counsel, you continue. So it's not unusual for, uh, defendants to make decisions independent of their counsel. Uh, the, the thrust of a defense is a decision for the defendant, not counsel to make. And this court explained in Wood v. Quarterman that even if a defendant is represented by counsel, uh, he can waive his right. Uh, in that case, it was a right to put on mitigation evidence at the punishment phase. Uh, and so that answers the question too, about the distinction between Gonzales v. Davis in this case. Gonzales v. Davis is the case where the mental illness, uh, does not suffice, and Martinez-Trevino is not available to a habeas petitioner who waived his right to have state habeas counsel. Uh, the, the Wood case explains that the standard is not, the standard for competency is the same, uh, whether the defendant waives counsel at the very beginning and never has it at all versus a defendant who has counsel and later decides to go against counsel's advice. So here, what we, at the most, we have a defendant who is represented by counsel but has been held competent, just like in the Wood case, to go against counsel's advice and to waive his right to state habeas proceedings. Uh, that shows that the, the potential, it's, there's certainly a factual distinction, but it's immaterial to the question before the court. Uh, Martinez-Trevino is available based on, uh, a breakdown in the principal age, agency relationship between a client and counsel, and, but the client is still always the principal. And so even if he has an agent, there are certain decisions that it's the principal who is entitled to make. And if he goes against his lawyer's advice, uh, that it's his right to do so. Uh, waiving state habeas or federal habeas or put, or the right to put on mitigation evidence, uh, or even to plead guilty, those are all things that it's the defendant's choice to make, not counsel's. Uh, unless there are further questions on this, I'll, uh, briefly touch on the, uh, question about the record. Um, certainly, uh, Shinvi Ramirez changes the posture to some extent, but, uh, we would submit that it's really E2, not Shinvi Ramirez, that affects this. But in any event, there's no reason to remand this to the district court to reconsider, because the district court already assumed that all of the federal evidence was properly before the court, and it still found no cause, cause and prejudice. So, uh, that would be needlessly prolonging the federal habeas proceedings to ask the court to go back and just said something that the court had already sort of taken into account. Uh, the, uh, we can even assume arguendo, as the district court did, that the new federal evidence is properly before the court, because none of the new federal evidence establishes that the petitioner was incompetent at the relevant time when he elected not to, uh, pursue state habeas proceedings. Um, and as to the state court record, we can even assume arguendo that the 4A motion and the other petition were submitted, because the evidence attached to those, uh, also did not show incompetence, uh, as, uh, we've already discussed. Unless there are further questions on that, we can turn to the third question as well. Um, and we've touched on this a bit, uh, especially in the context of the Gonzalez case, and the third question is if Mullis' state habeas counsel rendered inadequate assistance, was that a cause external to Mullis? Uh, the petitioner's, uh, position here, uh, which I think my friend really clarified at the podium a few minutes ago, is that Martinez means any ineffective assistance of state habeas counsel suffices for cause and prejudice. But that's not what Martinez does. Martinez is a narrow exception to the Coleman v. Thompson rule, and this court, uh, has, uh, would need to grapple with Davila and Shoup and all of the other recent precedent, really emphasizing that Coleman v. Thompson is the general rule and Martinez is a narrow exception. Uh, Coleman v. Thompson, of course, says that state habeas counsel's negligence is chargeable to the petitioner because there's no Sixth Amendment right of counsel under these circumstances. And it, uh, Martinez carved out a narrow exception to that if, uh, if it would have been ineffective assistance for state habeas counsel not to raise a particular IATC claim. But that leaves in place Coleman's rule, and Coleman is actually a case where the petitioner's state habeas filing deadline. Now, if you wanted to try to shoehorn that into Martinez' tribunio, you could try. You could say, if he hadn't missed the deadline, then he would have raised the IATC claim that I now wish to pursue. Uh, but Coleman still holds as the general rule, and even in Martinez' tribunio, uh, the court emphasizes that. So this is, uh, failing to prevent your client from himself waiving state habeas proceedings would, you know, be a similar extension of Martinez' tribunio to a holding that if state habeas counsel dismisses the deadline, then, uh, uh, it's external to the defense. But that, of course, would be contrary to Coleman v. Thompson. Uh, what we're dealing with here is whether to file, file a state habeas petition in July of 2012. Uh, at the time, uh, it's somewhat unclear whether the Office of Capital Writs, uh, was still representing him, but assuming it was, the Office of Capital Writs had a court order finding him competent, a court order saying that, uh, Mullis was entitled to make the waiver decision and that Office of Capital Writs was not to file something if he persisted in waiving, and even now there's no evidence that sometime in between, in the months between the hearing and the final, final habeas deadline, Mullis became incompetent. So I think the bottom line on that question is expanding Martinez' tribunio to this, uh, additional causal circumstance where it's not just any reasonable lawyer would have raised this IATC claim, but, you know, you were ineffective in some other way, and then we can then assume that you would have raised the IATC claim that the petitioner wants to raise. Uh, that's a bridge too far, uh, for expanding Martinez' tribunio. The Supreme Court has made very clear that that is going to be a narrow exception and it, it is not to be extended to new circumstances. So that all means that this court's holding in Gonzales v. Davis holds mental impairment is not cause external to the petitioner, uh, and it also shows that, uh, under the Coleman rule, just the fact that something was, uh, even assuming about for cause of the IATC claim not being raised doesn't mean that it falls within, uh, the, uh, external to the petitioner, uh, view. Now I'll just turn briefly, unless there are further questions on the scope of Martinez' tribunio, uh, I'll just turn briefly to the underlying IATC claim. As we explained in our brief, the petitioner needs to show more than just cause. He also needs to show actual prejudice, and his briefing in this court forfeited any argument that his underlying IATC claim would have succeeded if it had been raised in state habeas, much less on Genova review. The court doesn't need to reach the question because it should affirm on the procedural grounds found by the district court, but even if it did, the court can affirm on any basis supported by the record. And here, this is a Wiggins claim that is all complaints about matters of degree and trial strategy. All of those things are within, uh, counsel's, trial counsel's professional discretion. You know, which witnesses to call to put in evidence of abuse, that's a quintessential trial strategy question. How to cross-examine witnesses, which family members to call. Uh, and this is also not a case where, like in Wiggins, there was no investigation of a traumatic childhood or background. Trial counsel had a very, very thorough, uh, mitigation investigator. She went and tracked down his birth family that didn't even know he was still alive or where he was, going so far as to find a girl who had babysat him as an infant before he was adopted. This, this was a, this was a reasonable strategic decision by trial counsel. And so there's, uh, no way that the petitioner would be succeeding on the underlying Wiggins claim in any event. Uh, so for that reason, uh, even on de novo review, uh, and certainly because there's been no showing of actual prejudice for purposes of cause and prejudice, uh, the court should affirm, uh, and could do so on that additional basis. Unless there are further questions, I'll yield the rest of my time. All right. Thank you. Mr. Nolan. Sorry. Thank you. Uh, just a couple of minutes. Um, a couple of things. I think, you know, one of the things about, um, Dr. Scarano that you just asked about judging us in is that one of the things I think I neglected to say is Dr. Scarano found in his report that Mr. Mullis was not bipolar and what competent expert would have found that and what competent lawyer would let that go by having seen that. Um, and the reason he said that in his report is something about, well, he, he told me he was bipolar, but it, it didn't appear to me in my examination of him. That's not how things are supposed to work when mental health experts make a determination about someone's mental illness. And so that in of itself, that's a huge fact that I think I neglected to say. And when you brought up Dr. Scarano, Judge Higginson, it reminded me of that. And that's a big thing because if Dr. Scarano had had those records that we've been talking about, 20 years of records show that Mr. Mullis was profoundly mentally ill and bipolar. Everybody said he was bipolar. And that's the kind of thing that happens. Uh, one of the things that, that, um, counsel said about competence, that competency is a snapshot. It's a snapshot in a day, but that's, that, that can be true maybe in, in a, in a series of a trial or something like that. But in a situation like this, it happens over months because, because there were more, there were months left on the statute of limitations. So that question of competency is not just a snapshot in time. And if counsel had been effective, counsel would have had their own expert. They would have certainly provided Dr. Scarano with all of these records, uh, and then, and then get to that, that point. Um, the other thing I wanted to say is, uh, I think counsel mentioned the case Davila versus Davis, which is a Supreme Court case in 2017. And I would suggest that, um, that, that the lower court talked about that case and was, was wrong about that respectfully. Um, because, because Davila does not, um, change the analysis that we're dealing with here under Martinez. Davila merely declined to extend Martinez to the ineffective assistance of appellate counsel. And that's simply not an issue in this case. So I would suggest, um, that, that Davila is not, uh, a case that, that, that supports the, the director's position. Um, the other thing that came up is this question about Mr. Mullis being scared of prison. And I think, you know, that's, I think that that is relevant to the question of waiver, um, and that that should, should have been considered, uh, more broadly by the lower court. Uh, you know, we did raise, we raised this, um, and, and getting back to Judge Willett's question about another expert. And I talked about Dr. Dudley, Dudley briefly. And in, in Dr. Dudley's, one of his reports, um, he talked about the, the fact that Mr. Mullis, because of that fact in including, and, and then you take the constellation of all of his other mental illnesses and, and, and put them together with that fact that Mr. Mullis' waiver was not knowing, intelligent, and voluntary, because voluntariness is a part of competency. Um, and so that that should have been considered. And so, so, you know, what happened in this case in the lower court, um, is that while I was representing me and Mr. Walker were representing Mr. Mullis, he tried to waive again. Um, and we went, we, uh, the court scheduled a hearing and we went to put the hearing on. And that morning, uh, we went into the cell he was a, he was a complete mess because he cycles like this as I have seen myself over the 10 years I've represented him. And he said, I don't want to waive anymore. And he was crying and we brought him up to the courtroom and the judge was, the judge was so respectful to him and to us. And, and we presented him to the judge and he said, I don't want to waive anymore. And so we, the hearing got canceled, but we had all of these experts ready to testify to all of these things. And I think what we expected is we were going to get that opportunity, um, in, with the merits of our case under Martinez and that that's what should have happened. Now we have to deal with shin limiting that to some extent, but what I would suggest to your honors is that, um, you know, shin is new. Uh, it's only been out a year, the courts all over the country are grappling with what it means. Um, and that the court ought to send this back to the lower court to do that, that we should, we should have a hearing on these issues. Uh, the question of what evidence can come in, what evidence can't does the evidence in the motion count? Does the evidence in the habeas, these are very complicated questions that should be resolved, uh, at the first instance in the lower court that your honor. Thank you very much. Thank you, Mr. Nolan. Your case and all of today's cases are under submission and the court is in recess until nine o'clock tomorrow.